O'NIELL, J., considers the amount of the judgment excessive.

―――――

(86 South. 342)

No. 22583.

**COMMERCIAL BANK OF WOODVILLE, MISS., v. FIRST NAT. BANK OF MORGAN CITY.**

(June 30, 1920. Rehearing Denied Oct. 15, 1920.)

*(Syllabus by Editorial Staff.)*

1. Bills and notes ⬡68—Drawee bank liable on check forwarded by collecting bank, which it accepted by wire.

Where the bank on which a check was drawn wired the payee that it would protect the check, and that the drawer requested that the payee mail bill of lading for the cattle for which the check was given to the drawee bank, which wire the payee exhibited to the bank, in which he had deposited the check for collection, so that it thereupon allowed him to draw against the deposit, the drawee bank is liable to the collecting bank for the amount of the check, the telegram having been in acceptance of it, rendering the drawee bank the primary obligor, whatever was the agreement between the drawer and payee of the check, and the manner in which it may have been carried out.

2. Bills and notes ⬡68—Acceptance of check by bank may be by telegram.

Under Negotiable Instruments Law, §§ 132, 185, acceptance of a check by the drawee bank may be by telegram.

3. Bills and notes ⬡74—Acceptance of check or draft renders drawee primary obligor.

Under Negotiable Instruments Law, §§ 187–189, acceptance of a check or bill of exchange by the drawee renders him liable on it as a primary obligor.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; William C. Baker, Judge.

Action by the Commercial Bank of Woodville, Miss., against the First National Bank of Morgan City, La. From a judgment for plaintiff, defendant appeals. Affirmed.

Caffery & Brumby, of Franklin, for appellant.

Borah, Himel, Bloch & Borah and Carroll & Carroll, all of New Orleans, for appellee.

PROVOSTY, J. E. A. Pharr, having bought some cattle near Natchez, Miss., from one Blumenthal, gave to the latter a check on the defendant bank in payment. Blumenthal deposited the check with the plaintiff bank for collection, and the plaintiff bank transmitted it to the defendant bank for collection, with the request that the proceeds be remitted to the Interstate Trust & Banking Company, of New Orleans. The date at which the check was thus drawn, deposited, and transmitted for collection was May 15, 1915. On making the deposit Blumenthal requested that he be allowed to draw against it. The request was refused. But on the second day thereafter he brought to the plaintiff bank the following telegram, and renewed his said request, and it was acceded to on the faith of the telegram, which reads:

"To Henry Blumenthal, Woodville, Miss.:

"Mr. E. A. Pharr states that he gave you check on us twenty-five hundred fifty-five dol-

lars for seventy-three cows and ten calves. We will protect this check. Mr. Pharr requests that you mail bill of lading to us as he is in the country.

"[Signed]  First National Bank."

On May 24th the plaintiff bank, not having heard from the defendant bank, telegraphed to it:

"Why no report item sent ours fifteenth. Check cashed on your telegram. Answer."

And on the same day the defendant bank answered by telegram:

"Payment held pending receipt evidence cattle shipped."

On same day plaintiff sent to defendant the following telegram:

"We cashed Pharr's check on yourselves predicated on your wire that you would honor same. Item accepted and sent you as cash in good faith protestable. You hold without authority contrary banking practice. Looking to you to hold us harmless against any loss occasioned by your actions. Controversy between buyer and seller of cattle adjustable by principals to the transaction. Not a question between this bank and yourselves.

"We demand payment of the check; otherwise we shall be forced to proceed to protect our interests."

On the same day defendant wrote to plaintiff as follows:

"Confirming telephone message of this date, in which we ordered you to disregard a previous telegram, we wish to make our position clear, inasmuch as we are unable to get direct line connection with your office.

"Our impression was that our customer had directed us to hold payment on his check covering this transaction pending receipt of shipping receipt. Immediately after our wiring you in answer to your tracer, he came into our office and stated that payment should be withheld until your customer adjusted matter of grades of cattle.

"We wish to assure you that the maker of the check in question is financially and morally responsible, and as soon as he is satisfied in the premises we shall gladly make remittance."

E. A. Pharr was vice president of the defendant bank, and had ample funds to his credit in the defendant bank to meet the check.

[1] Upon these facts, which are undisputed, the defendant is liable to the plaintiff for the amount of the check, since the said telegram was an acceptance of the check, and rendered the defendant the primary obligor thereon. And this, regardless of what may have been the agreement between Pharr and Blumenthal, and of the manner in which it may have been carried out.

[2] An acceptance may be by telegram. 7 Cyc. 765; Annotations of 1914–1916 to Cyc.; Henrietta Nat. Bk. v. State Nat. Bk., 80 Tex. 648, 16 S. W. 321, 26 Am. St. Rep. 773; Johnson v. Clark, 39 N. Y. 216.

"Any act of the drawee which evinces a consent to comply with the request of the drawer will constitute an acceptance." 5 R. C. L. p. 520, § 42.

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer." Section 132 of Neg. Inst. L., Act 64 of 1904.

Section 185 of same act reads:

"Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

The telegram of defendant fully identified the check; and the words, "We will protect this check," can have but one meaning, namely, that defendant would pay the check in due course; i. e., on presentation, for that is when checks are required to be paid.

Defendant would have it that the acceptance through said telegram was not unqualified, but was rendered conditional by the words:

"Mr. Pharr requests that you mail bill lading to us as he is in the country."

These words do no more than impart a request from Mr. Pharr that Blumenthal mail the bill of lading for the cattle to the defendant bank. We fail to see, therefore, how they could imply a condition, or in any

way qualify the positive and absolute promise made to protect the check; i. e., pay it on presentation.

The learned counsel for defendant argue that, inasmuch as the telegram was addressed to Blumenthal, and not to plaintiff, and was sent after the check had been received on deposit for collection, it did not have the effect of creating a privity of contract between plaintiff and defendant, and, in support of that argument, they cite the case of Exchange Bank of St. Louis v. Rice, 107 Mass. 37, 9 Am. Rep. 1.

In that case the plaintiff cashed a draft before any promise had been made by the drawee to pay it, and the court held that a promise subsequently made by the defendant, drawee, to the drawer, to pay the draft, did not have the effect of creating a privity of contract between the plaintiff and the defendant drawee.

We do not see why that should not be good law; but we fail to see wherein it conflicts with the well-settled rule as stated in 5 R. C. L. 519, § 41, as follows:

"A check may be accepted by an unconditional promise in writing describing it in terms not to be mistaken. All the cases agree in holding that in order to make a promise of this character binding on a person who has received a bill, the bill must have been taken on the faith of the promise. But, where it has been so taken, it is now settled that the promisor must make his promise good. Any unconditional promise by a bank to pay a certain check then drawn, or thereafter to be drawn, makes the bank liable thereon to the person who holds and presents the check, having taken it with knowledge of and in reliance upon such promise."

[3] That the effect of such an acceptance is to render the acceptor a primary obligor, see Nego. Ins. L. §§ 187, 188, 189; 5 R. C. L. § 43.

Whether the detention of the check from the 17th, or 18th, until the 24th, unpaid, while having funds of the drawer on hand

147 LA.—30

for payment, did not amount to a refusal to pay under section 137 of the Neg. Ins. L., equivalent to an acceptance, and having all its effect, is a question we need not decide, since plaintiff is entitled to recover for the reasons already stated.

Judgment affirmed.