## FLATHEAD COUNTY STATE BANK v. FIRST NAT. BANK OF CALEDONIA.

(Circuit Court of Appeals, Eighth Circuit. August 18, 1922.)

No. 5610.

1. **Bills and notes ⟺68—Telegram stating that check was good did not bind bank to pay it.**

Where plaintiff wired defendant, asking if the check of a certain person on defendant's bank for $10,000 was good, defendant's answer that the check was good did not amount to an agreement binding the bank to pay the check.

2. **Bills and notes ⟺68—Alleged acceptor of check by separate instrument containing no clear obligation to pay not liable.**

Where the alleged acceptance of a check is by a separate instrument, and contains no clear obligation to make payment, there can be no recovery thereon.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the Flathead County State Bank against the First National Bank of Caledonia. Judgment on a directed verdict for defendant, and plaintiff brings error. Affirmed.

L. L. Brown, of Winona, Minn. (H. M. Lamberton, W. D. Abbott, and S. H. Somsen, all of Winona, Minn., on the brief), for plaintiff in error.

George W. Bunge, of La Crosse, Wis. (Andrew Lees, of La Crosse, Wis., on the brief), for defendant in error.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

COTTERAL, District Judge. The Flathead County State Bank, of Polson, Mont., brought this action at law to recover of the First National Bank of Caledonia, Minn., the amount of a check for $10,000, drawn by A. O. Myhre upon the latter bank. The grounds of recovery, as stated in the petition, were that for a valuable and sufficient consideration Myhre agreed to pay the plaintiff that sum, and in lieu of cash tendered the check, upon agreement that the plaintiff should hold it tentatively until it should telegraph the defendant to ascertain whether the defendant would accept and certify it, and this was done and the acceptance and certification were effected by telegraphic communication, but that thereafter the check was presented to the defend-

ant and protested, and payment was refused. The telegrams were exhibited with the petition, and were as follows:

"Polson, Mont., May 16, 1918.
"First National Bank, Caledonia, Minn.
"We hold check of A. O. Myhre on your bank for ten thousand dollars. Is it good.                     Flathead County State Bank,
"W. J. Burke, Cashier."

"Caledonia, Minn., May 16th, 1918.
"Flathead County State Bank, Polson, Mont.
"A. O. Myhre check for ten thousand dollars is good.
"First National Bank, Caledonia, Minn."

The defendant answered, admitting the telegrams, and the presentation and protest of the check, and making a general denial. It denied knowledge of the check, except through the telegrams, and alleged that Myhre had no funds on deposit in the bank, and that it could not legally accept the check, as the parties knew; that Myhre had good financial standing, and was worth in property more than the check, and defendant merely intended to inform plaintiff he was good for the amount, but never accepted or certified the check; that the check was given in partial repayment of the defalcation of his son in plaintiff bank, on the representation that a criminal charge against him would be withdrawn and plaintiff would use its influence to that end; that the authorities disapproved, and the son was sentenced; that Myhre was to return to Caledonia and make a deposit for the payment of the check, but failed to do that, and notified the defendant not to pay it, if it was presented; that the check was obtained without consideration, and by fraud and duress; and that defendant had no knowledge of the consideration for it until after its date.

The plaintiff replied, alleging that defendant had knowledge of the making and delivery of the check and the consideration therefor and the circumstances; that plaintiff had no knowledge as to the deposit or funds of Myhre in the defendant bank, nor as to his standing or property; that the agreement was the demands of the bank against the son were released; that the authorities were notified and the son was sentenced; and that the plaintiff had no knowledge whether payment of the check was stopped.

At the trial of the cause a jury was called, and witnesses testified in behalf of the plaintiff. The defendant offered no testimony, but moved the court to direct a verdict in its favor. The motion was sustained, and judgment was rendered for the defendant.

The plaintiff's witnesses were the cashier, president, and two other directors of the bank, and a state official. It will suffice to give the substance of the cashier's testimony. He testified to the making and delivery of Myhre's check, also the defalcation of his son, Martin Myhre, in the sum of $19,600, in the plaintiff bank. Myhre and two attorneys met with the directors of the bank at Polson. One of the attorneys represented that Myhre had considerable wealth, the family was well to do and honorable, and did not want the stockholders to stand all the loss, and desired to settle the son's civil liability to the bank. Offers were made, and eventually, $10,000 being agreed upon, the check therefor was tendered. Myhre said he had made arrangements with the de-

fendant to take care of it and pay it, and the fact could be ascertained by telegram. The check was accepted, with the understanding the defendant would be wired, and would "O. K." it, or say it was good. The settlement was not to influence the criminal proceedings against the son, but one of the attorneys there stated it was the purpose to show to the court restitution had been made and report the settlement to the state banking department and the Attorney General. Myhre's attorney, in his presence, said he was a wealthy farmer, had extensive land holdings in Houston county, Minn., that his son Martin had received none of his inheritance, that some of the other sons had, and Martin would inherit one-third of his property.

The cashier, by direction of the president, sent the telegram to the defendant and received the answer, copies of which are attached to the petition. The plaintiff accepted the check in settlement of the son's liability, and it was sent out for collection in regular course. The president of the bank went with Myhre and counsel to the banking department and Attorney General to inform them of the restitution. The son received a sentence of four years. The check went to protest, and was not paid. The testimony of the other witnesses is merely cumulative, and no statement of it is essential.

The plaintiff necessarily relies on the supposed acceptance of the check in question. Certain statutes of Minnesota are called to our attention as bearing upon the controversy, inasmuch as the place of payment of the check was in that state. The only application of them is that they sanction the acceptance of a check by a separate instrument, and, of course, by a telegram. Our opinion must doubtless be upon general authority with respect to the force and effect of the telegrams passed between these parties, under the circumstances of the case.

[1] It was clearly the intention of the Montana bank and A. O. Myhre that the latter was making payment of $10,000 to that bank, to settle in part the liability of his son. But the controversy is between the Montana and Minnesota banks. While it is true that Myhre represented that he had made arrangements with the latter to take care of the check and pay it, there was no testimony to show that he had done so, or that he had any funds on deposit in or available to the Minnesota bank, for the purpose of meeting the check. There is a dearth of circumstances to connect that bank with the transaction. For this reason it is necessary for us to hold that the question of its liabiliy must depend practically on the language of the telegrams; and, to state it more accurately, it is whether the Minnesota bank thereby agreed to bind itself to make payment of this check.

The case of North Atchison Bank v. Garretson, 51 Fed. 168, 2 C. C. A. 145, decided by this court, points out the test of liability in such cases. There the inquiring telegram was, "Will you pay James Tate's check on you, $22,000.00? Answer." And the answer was, "James Tate is good. Send on your paper." It was said the question was "whether the defendant bank agreed to pay Tate's check, * * * and that in our judgment is just what the bank * * * bound itself to do." In the opinion it was also said that, if the answer had been limited to the words "Tate is good," "there would be ground for

holding that the bank thereby intended an affirmative answer to the categorical question put to it; but all doubt is put at rest by the remaining words of the answer, to wit, 'Send on your paper.'" And the bank was held to be liable upon the check.

In the present case, the inquiry was whether a certain check was good, and the answer was it was good. There was omission of any language expressive of a purpose to honor the check. We are unable to construe the answer to that effect, without other aiding circumstances. Standing alone, it is technically an affirmation that the check of Myhre was worth its face at the time. The meaning ordinarily would be that the deposit account of the maker was then sufficient to meet the check. But this is different from undertaking to pay it, as would have been the significance of the act of formally accepting or certifying it.

Another case which is valuable in its application is First National Bank of Dunn v. First National Bank of Massillon (D. C.) 210 Fed. 542, where the inquiry was whether a check would be paid, and the answer was, "Forward your checks. They will undoubtedly be taken care of by the company when presented." This was held to fix liability; but it was noted that the inquiry was not whether the party was solvent.

In the case of First National Bank v. Commercial Savings Bank, 74 Kan. 606, 87 Pac. 746, 8 L. R. A. (N. S.) 1148, 118 Am. St. Rep. 340, 11 Ann. Cas. 281, no liability was found, for want of "absolute promise to pay." The telegrams were very similar to those here involved, and the decision is in point.

[2] The cases are to be distinguished which involve checks or bills on which acceptance is indorsed. Our investigation leads us to conclude that a party is not entitled to recover where, as here, the alleged acceptance was by a separate instrument, and there was not a clear obligation to make payment. 8 Corpus Juris, 305.

We are of the opinion that there was no substantial evidence of a binding agreement on the part of the defendant bank to pay the check in suit, and for that reason the trial court properly directed the verdict in its favor.

The judgment is accordingly affirmed.

HOOK, Circuit Judge, participated in the hearing of this case, and concurred in the affirmance of the judgment, but died before the opinion was prepared.