Toney Trevisol, Appellant, v. Fresno Fruit Growers Company, Appellee, et al., Appellants.

Union National Bank of Fresno, Appellee, v. Peoples National Bank of Albia et al., Appellants.

**BILLS AND NOTES: Holder in Due Course—Nonnecessity for Proof.**
1 Principle recognized that the transferee of a negotiable bill of exchange need not show his holdership in due course when the drawee fails to establish fraud in the inception of the instrument.

**BILLS AND NOTES: Acceptance—Insufficient Acceptance.** A telegram
2 by A to B to the effect that A has on deposit from C a named sum of money for the credit of D does not constitute an "unconditional acceptance" of a bill *thereafter* drawn by D on C and in favor of B as payee, even though B takes the bill on the strength of said telegram.

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

MARCH 17, 1923.

REHEARING DENIED JUNE 22, 1923.

APPEAL from judgments entered in two cases between the same parties on the same state of facts. Upon the trial below the actions were consolidated and tried to the court, a jury being waived. The opinion states the facts. *Affirmed* as to appellant Trevisol. *Reversed* as to appellant Peoples National Bank.

*Price & Hickenlooper* and *Miller & Everett,* for appellants.

*Bates &. Dashiell,* for appellee.

DE GRAFF, J.—This appeal involves two actions at law which were consolidated for the purpose of trial and judgment. The first case noted in the caption, to wit: *Trevisol v. Fresno Fruit Growers Co.* is an action in attachment. The second case, to wit: *Union Nat. Bank of Fresno v. Peoples Nat. Bank of Albia,* is an action by the plaintiff as payee to recover the sum of $611.39 from the defendant bank on a sight draft purchased by the plaintiff bank from the Fresno Fruit Growers Company. In this action Trevisol, plaintiff in the former case, intervened and pleaded substantially the same matters as were alleged by him in his attachment proceeding.

It is the claim of Trevisol and he alleges in his petition in attachment that he purchased from the Fresno Fruit Growers Company a carload of grapes on or about October 19, 1918; that the defendant agreed to divert said car at Sanger, California and that by failure of the defendant so to do the car traveled a longer distance than was necessary and was delayed for more than 10 days, and that by reason of the negligence of the defendant in this respect caused a damage to him in the sum of $611.39. It is further alleged that the Peoples National Bank of Albia has money in its possession belonging to the Fruit Growers Company. The Union National Bank of Fresno, California was made a party defendant since it claimed an interest in the money in the possession of the Iowa bank.

An answer was filed by the California bank in which it claims to be entitled to the money on deposit in the Peoples National Bank by reason of a telegraphic acceptance by the latter bank of a draft subsequently purchased by the California bank from the Fresno Fruit Growers Company in the sum of $611.39. Plaintiff Trevisol amended his petition and pleaded fraud on the part of the Fresno Fruit Growers Company in the making of the contract for the sale of the car of grapes, and that the California bank had knowledge of such fraud. By an amendment to its answer the California bank alleged that it was an innocent purchaser of the sight draft of the Fresno Fruit Growers Company in that it purchased same in good faith and for value and relying on the acceptance of the Iowa bank.

In the second case the plaintiff Union National Bank of California alleged in its petition that on the 19th day of October 1918 the defendant Peoples National Bank of Albia, signed and caused to be sent to the plaintiff bank the following telegram:

"Union National Bank

Fresno, California

Toney Trevisol deposited Six Hundred Eleven Dollars and Thirty-nine Cents for credit of Fresno Fruit Growers Co. for Muscats subject to sight draft bill of lading.

Peoples National Bank."

It is further alleged that upon receipt of this telegram, and relying thereon, the plaintiff bank bought the sight draft and bill of lading from the Fruit Growers Company paying therefor the sum of $611.39, and sent the draft to the Peoples National Bank for payment; that no part thereof has been paid and prays judgment against the defendant bank in the said sum with interest and costs.

The Peoples National Bank in its answer denied that it had sent the telegram as alleged; denied that the plaintiff took an assignment of the sight draft and bill of lading; denied that it was a negotiable instrument and alleged that it had been subject to garnishment by Toney Trevisol but held the sum of $611.39 to be paid to the legal owner thereof, as ordered by the court.

The issues thus presented were tried to the court, a jury being waived with the consent of all parties.

The trial court decided the issues in favor of the Union National Bank in both cases and determined (1) that there was no fraud shown in the making of the contract between Trevisol and the Fruit Growers Company (2) that there was no negligence on the part of the Fruit Growers Company (3) that the telegram sent by the Iowa bank to the California bank and the purchase of the draft on the reliance of the telegram constituted an original contract between the two banks. Upon these findings the trial court dismissed the petition of Trevisol in the first case and his petition of intervention in the second case, and entered judgment in favor of the Union National Bank as against the Peoples National Bank the sum of $611.39 taxing one half the interest and costs to the Peoples National Bank and the other one half against Trevisol.

We deem it unnecessary to incumber this opinion with all of the telegrams sent and received respectively prior to the consignment of the carload of grapes in question. It appears that the Fruit Growers Company upon inquiry from Trevisol wired on October 9, 1918 the price F. O. B. California, time of shipment, and character of grapes. On October 10th Trevisol wired for certain information concerning the grapes to which on October 12th the Fruit Growers Company made answer. On the same day Trevisol replied by wire as follows: ''Ship one car sixteen ton Muscates at once on wire from you will deposit with Peoples National Bank here amount payable on receipt your draft and bill of lading and examination if you can ship two cars on same terms explain what lugs are.''

The Fruit Growers Company replied by wire: ''Answering your wire our lugs-Muscates Wine Grapes are cash F. O. B. Calif not cash F. O. B. Albia. If you want them on our terms answer quick. Lugs mean thirty pound boxes.''

No further communication passed between these parties until October 19th when the Fruit Growers Company sent to Trevisol the following telegram: ''Ardee eight five eleven from Sanger eighteenth containing Thousand Two Lugs second crop Muscates net Twenty Seven Thousand Hundred Seventy Three Pounds Net Invoice Six Hundred Eleven Dollars Thirty Nine Cents Wire Union Natl. Bank Fresno above amount and we will divert car to you act quick.''

On October 19th Trevisol wired from Albia the following: "My bank wired your bank today guaranteeing payment. Ship quick."

Trevisol then went to the Peoples National Bank of Albia, Iowa and had the president of that bank prepare a message to be sent to the Union National Bank of Fresno, California. This was done and as prepared by the president read as follows: "Tony Trevisol deposited six hundred eleven dollars thirty-nine cents for credit of Fresno Fruit Growers Co., for Muscats subject to sight draft-Bill of lading and inspection.

Peoples National Bank."

Trevisol was authorized by the bank to transmit this message but before delivery to the telegraph office Trevisol without notice to the bank or knowledge on its part struck the words "and inspection" and the message as amended by Trevisol was received by the California bank. Trevisol then deposited in the Iowa bank the net invoice price, and a certificate of deposit was prepared and kept by the Peoples National Bank reading as follows: "Tony Trevisol has deposited in this Bank Six hundred eleven and 39/100 Dollars ($611.39), Payable to the Order of Fresno Fruit Growers Co., upon the return of this Certificate properly endorsed, as per wire of this date. .J. A. Canning, Cashier."

Upon receipt of the telegram the Union National Bank notified the Fruit Growers Company thereof and relying thereon purchased from the Fruit Growers Company their draft in the sum of $611.39 and paid therefor by placing the amount to the credit and account of the Fruit Growers Company on October 21. This draft read as follows:

"No 1644

Fresno Calif. Octo. 21, 1918

Fresno Fruit Growers Company

At Sight with Exchange Pay

To the Order of

Union National Bank Fresno Calif Six hundred eleven and 29/100 dollars $611.39 On arrival of car no R.D. 8511

Guarantee Peoples Nat'l Bank
Albia Iowa.

Value received and charge to account of

Fresno Fruit Growers Co.

To: Tony Trevisol         By; (SGD) Moore.

c/o Peoples Natl Bk.

Albia, Iowa.

(Stamped on face of Exhibit) 'Peoples Nat'l Bank, No. 22425, Albia Ia.'

[Indorsed on back of exhibit]

Pay to order of any Bank or Banker or Trust Co. All prior endorsements guaranteed. Oct. 21, 1918.

90-92

Union Nat'l Bank.''

This draft attached to a straight bill of lading was immediately sent to the Iowa Bank. The record further shows that when the grapes arrived in Albia, the car having been routed in. the first instance to Chicago, they were found to be in such condition that Trevisol refused to accept same and gave the Iowa Bank a written stop-payment notice "not to pay over to the Fresno Fruit Growers Company or the bank through whom draft was made nor pay said draft." The bank at this time believing that Trevisol had the right of inspection and examination of the car, and acting upon the notice given by Trevisol, refused to honor the draft. This brought telegraphic inquiry from the California bank asking why payment of draft had not been made. The Iowa bank answered: "Grapes recd in bad condition Trevisol will not accept." To this wire the California Bank replied: "The telegram not satisfactory. We cashed Fruit Growers draft against your telegram of October 19, and we demand immediate payment. It is inconceivable that you repudiate your own telegram." This telegram bears date November 8 and on November 12 Trevisol instituted his attachment proceeding against the Fruit Growers Company by garnishment of the funds in the Albia Bank.

The determination of the issues primarily depend upon the answers made to two questions suggested by the pleadings and the proof. (1) Did the plaintiff Trevisol sustain his plea of fraud? (2) Did the telegram of the Peoples National Bank of Albia to the Union National Bank of Fresno, California con-

stitute an original contract or an acceptance of the sight draft presented to the Iowa bank for payment? Of these in their order.

I. Unless the evidence sustains plaintiff's plea of fraud, the Union National Bank was under no legal obligation to prove that it is a holder in due course of the instant bill of exchange.

1. BILLS AND NOTES: holder in due course: nonnecessity for proof.

*Iowa Nat. Bank v. Davis,* 188 Iowa 346; *Montrose Sav. Bank v. Claussen,* 137 Iowa 73.

If a plea of fraud fails as a defense in a suit on a negotiable instrument the *bona fides* of the holder is immaterial. The Union National Bank as payee was in possession of order paper, and this constitutes prima-facie evidence of title and ownership. *Tolerton & S. Co. v. Anglo-California Bank,* 112 Iowa 706; *American Express Co. v. Peoples Sav. Bank,* 192 Iowa 366; *Marshak v. Fontana,* 195 Iowa 511.

The findings of the trial court on the issue of fraud has the effect of a verdict of the jury, and this court will not disturb the finding unless so clearly against the weight of the evidence as to justify a holding of affirmative error. The conflict of theory in briefs of appellants and appellee respectively is a conflict of interpretation and involves the character and terms of the contract entered into by Trevisol with the Fruit Growers Company in the purchase of the car of grapes. Sufficient to state that the preliminary telegrams between Trevisol and the Company prior to October 19 did not result in a contract. There was no meeting of minds. No proposition or offer made by either party was accepted by the other. Not until October 19 was a definite proposition made that was accepted by the offeree. On that date a new offer was made to Trevisol by the Fruit Growers Company to the effect that a car of grapes No. 8511 had left Sanger, California on the 18th and if he would wire the net invoice price in the sum of $611.39 to the Union National Bank the Fruit Growers Company would divert this car to him. Upon this information and proposition Trevisol acted, and it was upon this proposition that he had the Peoples National Bank prepare the message to be sent to the California bank to meet the conditions of the telegraphic offer. The Iowa Bank undoubtedly believed that the car was subject to inspection on arrival and added to the telegram "and inspection"

which words were stricken by Trevisol without the bank's knowledge. There must have been a reason on the part of Trevisol for making this amendment to the telegram. It is apparent had these words remained the Fruit Growers Company would not have diverted the car. We are satisfied that the trial court ruled correctly on this phase of the case.

II. The trial court ruled in favor of the California bank on the theory that the Iowa bank became primarily liable to the California bank by reason of the telegram of October 19. Does

2. BILLS AND NOTES: acceptance: insufficient acceptance.

the evidence sustain this interpretation of the transaction?

The failure of Trevisol to establish the pleaded fraud eliminates certain propositions on this appeal which otherwise would be quite pertinent in the determination of the issues as recited by appellants. At this point it may be stated that since the *bona fides* of the California bank is not involved, the fact that no money was paid to the Fruit Growers Company in the purchase of the draft by the California bank, but only credit given to its account in the bank, is wholly immaterial.

We recognize the rule that if a bank discounts a negotiable instrument, and merely credits the amount on the depositor's account without making payment or incurring any increased obligation or liability, it is not sufficient to constitute the bank a holder in due course. The plaintiff bank was in possession of order paper payable to itself and this was sufficient to constitute a prima-facie case.

What is the legal effect of the telegram sent by the Iowa bank upon the request of Trevisol? An acceptance of a bill of exchange is a written unconditional promise to pay, and may be made before the bill is drawn.

When an acceptance is written on a paper other than the bill itself, it does not bind the acceptor except in favor of a person to whom it is shown and who, on the faith thereof, receives the bill for value. Section 3060-a134 Supplement Code 1913. Section 3060-a135, ibid. A telegram may constitute an acceptance. *Iowa State Sav. Bank v. City Nat. Bank*, 183 Iowa 1347; *Commercial Bank of Woodville v. First Nat. Bank*, 147 La. 925 (13 A. L. R. 986).

The material question is whether the instant telegram of the Iowa bank constituted the signification by the drawee of his assent to the order of the drawer. Did it constitute a promise to perform by the payment of money? Section 3060-a132 ibid. Our negotiable instruments law clearly defines and limits an acceptance of a bill of exchange. An acceptance is a new contract between the acceptor and the payee or his assigns.

It will be observed that the instant telegram was not sent in response to an inquiry from the California bank. Taking the telegram by its four corners it is merely a statement that a sum of money has been placed on deposit for the credit of the Fresno Fruit Growers Company. It contains no promise to pay the sum specified as a distinct and separate obligation of the Iowa bank.

In *Elliott v. First State Bank* (Tex. Civ. App.) 135 S. W. 159, the telegram of inquiry read: "Will you pay check D. S. Elliott eighteen hundred ninety dollars. Rush answer." The drawee bank wired reply: "D. S. Elliott has deposited with us seventeen hundred ninety dollars to pay check drawn by D. S. Elliott favor O. H. Kilpatrick." It was held on appeal that the telegram did not constitute an acceptance of the check.

In the case of *Iowa State Sav. Bank v. City Nat. Bank* 183 Iowa 1347 the defendant bank received telegram from plaintiff as follows: "Will you pay check for ten hundred thirty-five dollars signed Lon Fraseur for cattle?" In response the defendant bank wired: "We will pay check for ten hundred thirty-five dollars signed Lon Fraseur." The telegram was construed by this court as the promise of the appellant to pay and that it amounted to a certification of the check. The language of the telegram was in unequivocal terms and the promisor incurred a primary obligation and became the principal debtor. See, also, *Midwest Nat. Bank & Tr. Co. v. Niles & Watters Sav. Bank*, 190 Iowa 752; *Flathead County St. Bank v. First Nat. Bank*, 282 Fed. 398.

The instant sight draft was addressed to Toney Trevisol as drawee. The Iowa bank necessarily received its authority from Trevisol to pay same. His certificate of deposit was in the custody of the Iowa bank, and the bank may be viewed a mere

bailee. It is sufficient to state that the telegram did not constitute an unconditional acceptance of a bill.

Wherefore the judgment entered by the trial court against the Peoples National Bank of Albia is *reversed,* and the interest and costs are hereby ordered taxed to the appellant Trevisol and the judgment entered against Trevisol is *affirmed.*

PRESTON, C. J., STEVENS and FAVILLE, JJ., concur.