No. 2093

Second Circuit

FRANK SCHUTTE v. CITIZENS BANK OF HAYNESVILLE, LOUISIANA

(March 11, 1926, Opinion and Decree)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Bills and Notes— Par. 32.**

When a bank credits a depositor with the amount of a check drawn upon it by another customer and there is not want of good faith on the part of the depositor, the act of crediting is equivalent to a payment in money and the bank cannot recall or repudiate the payment because upon an examination of the account of the drawer it is ascertained that he is without funds to meet the check, though when the payment was made the officers labored under the mistake that there was sufficient funds.

Appeal from the Third Judicial District Court of Louisiana, Parish of Claiborne, Hon. J. E. Reynolds, Judge.

This is a suit against a bank to recover the amount of a deposit credited to the plaintiff.

There was judgment for the plaintiff as prayed for and defendant appealed.

Plaintiff moved to amend the judgment allowing interest.

Judgment amended allowing interest and affirmed.

R. L. Williams, of Homer, attorney for plaintiff, appellee.

W. F. M. Meadows, McClendon & Seals, of Homer, attorneys for defendant, appellant.

ODOM, J. On July 5, 1922, the plaintiff presented to the defendant a check drawn by one Ben T. Mays in his favor on the Citizens Bank of Haynesville for $651.00, which check was accepted by the bank and the proceeds deposited to the credit of plaintiff and a duplicate deposit slip for the same issued to him.

Some time later the plaintiff drew his check for the amount of the deposit on said bank and payment was refused.

Plaintiff brought this suit against the bank to recover the amount of the deposit.

The defendant, in answer, denied indebtedness on the ground that "at the time said check was accepted by defendant for deposit and said deposit slip issued on July 5, 1922, the funds to the account of the maker, Ben T. Mays, were not sufficient to cover payment of said check, nor were such at any time thereafter sufficient to cover payment of the same".

And the bank alleged further, in answer, that at the time said check was accepted for deposit and the deposit slip issued, the funds of the said Ben T. Mays on deposit in its hands stood attached under garnishment by his creditors and that the paying teller who "accepted said check and issued said deposit slip was unaware of the fact that the account of said Ben T. Mays at that time and prior thereto stood attached and garnisheed, and was insufficient to cover payment of the same".

There was judgment in the lower court in favor of the plaintiff as prayed for and the defendant appealed. Plaintiff moved to amend the judgment so as to allow interest at 5% per annum from July 5, 1922, until paid.

## OPINION

The testimony shows that on July 5, 1922, the day on which the transaction between plaintiff and defendant took place, Ben T. Mays, the drawer of the check, had on deposit in the bank the sum of $389.92, an amount insufficient to pay the check presented.

It also shows that on the same day a magistrate served notice of seizure of a part of said fund through garnishment process by two of Mays' creditors. There appear to have been two seizures made, each for $75.00.

Plaintiff contends that these seizures were illegal because the notices were served by the magistrate himself and not by an officer authorized under the law to make the service.

Under the view which we take of the case, it is not necessary to pass upon the validity of these seizures, as we think the bank is liable to plaintiff in any event under the circumstances.

When plaintiff presented the check to the bank it was received by the paying teller, Miss Brooks, who examined the check and asked him if he wanted the amount in cash or whether he wanted credit for it on his account. He informed her that he wanted to deposit the amount to his credit, whereupon she made out a deposit slip as follows:

"Deposited by
"Frank Schutte
    "With
"Citizens Bank
"Haynesville, La.
                    "7/5/1922.
"Please list each check separately.

"Currency              Dollars Cents
"Currency
"Silver
"Gold
"Checks as follows:
   "Ben T. Mays       651    00
                    ————————
   "Total:          $651   ____
      "Duplicate.

"See that all checks and drafts are endorsed."

She delivered to plaintiff the duplicate thereof as he did not have with him his passbook.

Plaintiff says that when the check was presented to Miss Brooks, the teller, she "turned to the right", another cashier there; she asked him what about the check; he told her to go ahead and look; she did and she returned to me, asked me if I wanted the cash or put to my credit. I told her just put it to my credit, so she did".

Plaintiff's wife, who was present at the time, was sworn and corroborated his testimony on that point in detail.

Miss Brooks, the teller, says that she did not look at the books but said: "Well, he came in and I asked him if he wanted credit for it; he said he did; I made out the deposit slip and handed it to him; that was all that was said between us. I didn't look at the books. I just gave him credit for it."

She said that at the time the books were within three feet of her. She denied having a conversation with anyone in the bank and no one in the bank seems to recall that she did. Whether she did or did not we think is immaterial.

Plaintiff left the bank immediately. Two days later, on July 7, as shown on the books of the bank, this check was charged back to plaintiff.

Mr. Queenan, the cashier of the bank, says that it was discovered that Mays, the maker of the check, did not have sufficient funds on deposit to cover the check and that what funds he had on deposit were attached, for which reason the check was dishonored and charged back to plaintiff.

There is a conflict in the testimony as to whether plaintiff had immediate notice that the check was charged back to him. Plaintiff says he had no notice of that fact until some time later, either July 22 or August 22, when he drew his check on the bank for the amount of the deposit, which was turned down. He says that he then went to the bank and asked why payment of his check had been refused and was then told that the check which he had deposited had been charged back to him for the reasons above stated.

Mr. Record, an employee of the bank, says that the plaintiff was in the bank about two days after the deposit was made, possibly on the 8th, at which time a conversation came up over the matter, and that plaintiff was then informed that the bank had charged the check back to him and that he tried to give the check back to plaintiff who refused to accept it.

Queenan says that he then mailed the check to plaintiff. But the record shows that plaintiff did not receive it, although he was in the city and remained there some time thereafter. The letter enclosing the check went to Oklahoma and was finally returned to the bank and the check and the letter remained in the files of the bank until delivered to the bank's attorneys to be used in this suit.

Even if we accept the testimony of the

bank's employees as true, it is plain that plaintiff had no notice of the dishonor of the check which he deposited for at least two days and possibly longer after it was deposited and after he had received credit therefor.

The check which plaintiff presented was drawn on the defendant bank. The transaction as above detailed was an unqualified acceptance of the check. Whether the teller who handled the check looked at the books to ascertain the condition of the drawer's account or not makes no difference. She had the opportunity of looking and of ascertaining that fact, as the books were within three feet of her at the time she accepted the check. It is certain that she asked for no delay in which to ascertain the condition of Mays' account at the bank. The check was accepted and the deposit placed to plaintiff's account without reservations.

According to the bank's books the deposit was allowed to remain on the books for at least two days. The bank had no right to then cancel the deposit and charge the check back to plaintiff. When the bank thus accepted and paid the check it became a completed transaction and the bank was bound.

The rule is thus stated in 3 R. C. L., Section 153, page 526:

"When a bank credits a depositor with the amount of a check drawn upon it by another customer and there is no want of good faith on the part of the depositor, the act of crediting is equivalent to a payment in money and the bank cannot recall or repudiate the payment because, upon an examination of the account of the drawer, it is ascertained that he is without funds to meet the check, though when the payment was made the officers labored under the mistake that there was sufficient funds. In such a case the bank could have received the check conditionally and have come under obligation to account to the holder for it only in the event that an examination of the account of the drawer it was found that he had funds to meet it or in the event that he provided funds for its payment. Or it could have asked for time to examine the account that it might determine whether it would accept and pay or dishonor the check."

In support of this text there is cited decisions from the United States Supreme Court and from Alabama, Illinois, Indiana, Kansas and New York. The only dissent from the rule seems to be from the courts of California.

In the case of Henry Cohen vs. First National Bank of Nogales, Arizona, the Supreme Court of that state in 198 Pac. 122 (15 A. L. R. 701), held that the bank having received for a depositor a check on itself for credit to his account and having mailed to him a notice and a deposit slip showing that the credit was made, cannot charge back the check when it proves to be an overdraft.

This case is on "all fours" with the case at bar. The organ of the court cites and reviews decisions by the United States Supreme Court and by the courts of last resort of many of the states.

In 15 A. L. R., beginning on page 709, there is a lengthy annotation of authorities on the subject of "right of a bank to charge back checks drawn upon itself which it has credited to a depositor under the mistaken belief that the drawer's account is good".

With few exceptions, notably those from the California courts, the decisions are to the effect that the bank has no such right in the absence of fraud or deceit on the part of the depositor.

In the instant case, no fraud or deceit is charged to the plaintiff.

The receiving of the check by the defendant and the crediting of plaintiff's account with the amount thereof and the issuance to him of a duplicate deposit ticket was an acceptance of the check.

"Any act of the drawee which evinces a consent to comply with the request of the drawer will constitute an acceptance."

5 R. C. L., page 520, Section 42.

"The acceptance of a bill is the signification of the drawee of his assent to the order of the drawer."

Section 132, Negotiable Instruments Law, (Act 64 of 1904).

The acceptance of the check by the defendant rendered it the primary obligor. Having thus accepted the check, it makes no difference whether the maker had sufficient funds in the bank to pay it or not; the bank is bound.

See Commercial National Bank of Woodville vs. First National Bank of Morgan City, 147 La. 925, 86 South. 342.

We hold that the defendant unconditionally accepted the check by receiving it and issuing to plaintiff the deposit ticket.

But even if that were not true the bank is still bound for it failed to return the check within twenty-four hours after its presentation.

See Sections 136 and 137, Negotiable Instruments Law (Act 64 of 1904).

Learned counsel for defendant says, in brief, that if the court should hold that defendant accepted the check by giving plaintiff credit therefor, it was only a qualified acceptance under Section 141 of the Negotiable Instruments Law, and he calls attention to the fact that the deposit ticket issued to plaintiff has printed on the back of it the words, "all items credited subject to final payment". He says this constituted notice to plaintiff. But the notice printed on the back of the deposit slip is fatal to defendant's contention. That notice reads in full as follows:

"NOTICE TO CUSTOMERS:

"All items credited subject to final payment. All items *not* payable in Haynesville received by this bank for credit or collection *are taken at the owner's risk.* This bank as agent for the owner will forward same to collecting agents outside of the city, using its best judgment in the selection of such agents, but should they convert proceeds or remit in checks or drafts which are thereafter dishonored, or should not come into full possession and final payment for said items, the amount for which credit has been given will be charged back.

"This bank contracts no responsibility for neglect or default of collecting agent."

The check was not taken for collection. It was not only payable in Haynesville but it was payable by the defendant bank itself. It was not credited subject to final payment. It was instantly paid by the defendant crediting the depositor with it. If the account of the maker of the check was not in such condition as to warrant the payment of the check, or if his credit at the bank was not good, the defendant has only itself to blame for its loss.

The court below allowed no interest and plaintiff moved to amend the judgment so as to allow interest at 5% per annum. We see no reason why he should not have interest at least from judicial demand until paid.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended so as to allow interest at 5% per annum from judicial demand, and as thus amended that it be affirmed with costs.