No. 2905

Second Circuit

---

SOWERS COMPANY v. FIRST NATIONAL BANK OF WINNFIELD

---

(June 28, 1927. Opinion and Decree.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Banks and Banking —Par. 45, 47, 51, 54.**
The crediting of a check drawn on itself to a depositor's account by a bank is a payment of the check, and in the absence of fraud on the part of the depositor or mistake on the part of the bank, the bank cannot thereafter repudiate the transaction and charge the amount back to the depositor on the ground that it was an overdraft.

2. **Louisiana Digest—Banks and Banking —Par. 51, 56.**
Evidence held to show that the bank accepted and paid the check uncondi-

tionally. The crediting of the amount thereof in the depositor's pass book was equivalent to a payment in cash.

Appealed from the Eighth Judicial District Court of Louisiana, Parish of Winn. Hon. F. E. Jones, Judge.

Action by The Sowers Company against First National Bank of Winnfield.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Eugene Beck, of Winnfield, attorney for plaintiff, appellee.

John J. Peters, of Winnfield, attorney for defendant, appellant.

ODOM, J. This is an action by the plaintiff to recover of the defendant bank $400.00 deposited by plaintiff in the said bank, for which credit was given the depositor, which amount was subsequently charged back to the depositor for the reason that the check deposited was an overdraft.

There was judgment for plaintiff and defendant appealed.

OPINION

On April 12, 1926, the Winnfield Construction Company, by Hall, its general manager, gave the plaintiff, The Sowers Company, a check on the defendant bank for the sum of $400.00. The plaintiff company was a customer of the bank and had a deposit account there. On that day Mr. Sowers of the plaintiff company endorsed said check and deposited it, along with twenty-five other checks, in the defendant bank, the total amount of the deposit being $887.70.

Mr. Sowers made the deposit slip, listing all the items, including the check of

the Winnfield Construction Company for $400.00. He had with him his bank passbook, in which he was given credit for the full amount of the deposit, including the $400.00 check. This was on April 12th. On the following day The Sowers Company was credited on the bank's books with the amount of the deposit. However, on the 13th the book-keeper for the bank, under instructions of the president, charged the $400.00 check back to plaintiff, for the reason that the check was an overdraft.

Plaintiff brings this suit to recover the said amount, alleging, as a cause of action, that defendant had accepted and paid said check unconditonally, and that by acceptance of the check for $400.00 drawn on itself said acceptance was a payment thereof by the bank, and that the defendant bank was not warranted in law in charging the amount back to plaintiff upon discovery that the check was an overdraft.

The law is that the crediting of a check on itself to a depositor's account by a bank is a payment of the check, and in the absence of fraud on the part of the depositor or mistake on the part of the bank the bank cannot thereafter repudiate the transaction and charge the amount back to the depositor on the ground that it was an overdraft.

Schutte vs. Citizens Bank of Haynesville, 3 La. App. 547.

3 Ruling Case Law 536, section 153.

Commercial National Bank of Woodville vs. First National Bank of Morgan City, 147 La. 925; 86 South. 342.

Cohen vs. First National Bank of Nogales, 198 Pac. 122. (Reported in 15 A. L. R. 701.)

See, also, note 15 A. L. R. 709.

Counsel for defendant does not dispute that the law is as above stated. But the defense to the action is that the bank accepted the check conditionally to the full knowledge of the depositor and that it having accepted the check conditionally and it having proved worthless the bank was within its legal rights in charging the amount back to the depositor.

The question, therefore, to be determined is whether the deposit was in fact conditionally accepted, there being no suggestion that the depositor was in bad faith or that it was accepted by mistake.

Mr. Bryan, president of the defendant bank, testified that the deposit was taken by him; although his answer to one question indicates that his memory on that point is not very clear, for he was asked:

"I believe you stated that you took the deposit?"

"Yes, sir. If I recall right I took the deposit."

Mr. Bryan testified that Mr. Sowers of the plaintiff company came into the bank after banking hours on April 12th and presented this with other checks for deposit; that he told Mr. Sowers that Hall, general manager of the Winnfield Construction Company, by whom the check was drawn and signed for said company, had no authority to sign checks for the company, and, further, that the company had no funds to protect the check; and he further said:

"we talked on about it and he asked me if I would see Mr. McDonald and ask him about the check. I took the check and told him I would see of Mr. McDonald would stand behind it, and I took the check and early next morning I got hold of Mr. McDonald and he told me he could not pay the check, that he had al-

ready lost eighteen thousand dollars and he was not going to lose any more * * * I told Mr. Sowers I would take it and see Mr. McDonald. When I saw Mr. McDonald, he told me that he would not O. K. the check, and I immediately sent Mr. Earl Hughes to Mr. Sowers' store with the check, and when he got down there Mr. Sowers says 'you see Mr. Bryan, I have talked to him about it,' and when Earl came back I told him to charge it to Mr. Sowers' account. * * * "

Earl Hughes is a bookkeeper for the bank. He was called to testify by defendant and was asked this, among other questions, by counsel for defendant:

"Do you recall any conversation or promise Mr. Sowers made Mr. Bryan on either of these days?"
and he answered:

"I do not."

As against Mr. Bryan's testimony that the deposit was received by him after banking hours, and that it was conditionally received, we have that of Mr. Sowers who swore positively that the deposit was not made after banking hours but, on the contrary, was made before two o'clock in the afternoon, and that it was accepted and credit therefor given in his pass-book not by Mr. Bryan, the president, but by Mr. Scott, the cashier of the bank.

We also have the testimony of Mr. Hall, who drew the check, that he was in the bank when Sowers made the deposit, that it was made before two o'clock, and that Scott, the cashier, took the deposit.

Both stating that if Mr. Bryan was present at the time they did not see him.

Scott, the cashier, was called by the defendant and his testimony as to whether he received the deposit is somewhat equivocal. He was asked if he recalled the deposit, and he said he did not. Examining Sowers' pass-book with reference to the entry of April 12th (the deposit in question) he was asked who made the entry and he said:

"Mr. Bryan and I write a right smart alike, especially figures; I don't know whose writing it is. It looks like I might have made it in the book here. I might know, though, we write so much alike, especially figures."

Further questioned, he said he did not recall having received the check subject to payment, and was asked:

"There was not anything said about funds for paying it?"
and he answered:
"There was not."

And, again:

"Q. You would not say that you did or didn't take this deposit?"
"A. No, sir. Mr. Bryan could have handed me the slip, and then I would have put it on the book when he received the deposit."

The court then asked Mr. Scott:

"Could you say that is your writing?"
and he answered:

"I think it is; I could not swear to it, though."
"Q. Do you know whether or not you took this four hundred dollar check on the Winnfield Construction Company signed by Mr. Hall?"
"A. No, sir; I didn't take that check.
"Q. You don't know anything about it?
"A. I didn't know anything about it until Earl carried it back."

In view of the positive testimony of Sowers and Hall that the deposit was made before two o'clock, during banking hours, and that it was taken and accepted and credited in the pass-book by Scott, the cashier, and the testimony of Scott,

the cashier, as above quoted, we conclude and hold that the deposit was, as a matter of fact, taken and accepted by Scott and not by Mr. Bryan, and that Bryan's memory is at fault.

To corroborate the testimony of Bryan that the deposit was made after banking hours, which point is relevant only on the question of whether Bryan instead of Scott took the deposit, defendant proved by Earl Hughes, the bookkeeper, that it was the custom of the clerical force in the bank to enter on the books all deposits made up to the close of banking hours each day on the date they were made, and that when deposits are made after banking hours the credit is made on the following day. The books were introduced showing that this deposit was credited to The Sowers Company on April 13th, while admittedly the deposit was made on the 12th.

This testimony is of little, if any, value, in view of proof that the posting dates were not always accurate.

Mr. Bryan, president of the bank, is the only witness who testified that the check in question was accepted conditionally, and his testimony on that point is wholly uncorroborated.

In this connection we cannot leave out of consideration another point in connection with Mr. Bryan's testimony. He says the check was presented to him by Sowers and that he then and there informed Sowers that he could not accept it unless Mr. McDonald would stand behind it, and yet the fact remains that Sowers was credited with the amount both in his passbook and on the books of the bank. It does not seem reasonable to us that if Bryan had agreed to accept the check only in the event that McDonald would approve it he would have either credited or permitted to be credited the amount to The Sowers Company's account. Bryan does not say that the check was accepted and paid through mistake. He says it was not really accepted at all; that he told Sowers that he would have to see Mr. McDonald. Yet the fact remains that the check was accepted by some one and the depositor given credit therefor which, of course, is equivalent to payment.

As to whether the check was accepted and paid conditionally or not, Mr. Sowers says that the deposit was received and accepted by Mr. Scott, the cashier, and that there was not a word said when the deposit was made. No one in the bank heard anything said about it. Scott, the cashier, says nothing was said. Mr. Hall says he was in the bank when the deposit was made and that he heard no discussion of the matter. Sowers' testimony is, therefore, corroborated not only by witnesses but also by the fact that he received the credit in his pass-book and on the books of the bank. As stated, the testimony of Mr. Bryan lacks support.

The district judge, in a carefully prepared written opinion, for which we are indebted to him, states that he is personally acquainted with both Mr. Bryan and Mr. Sowers and he vouches for the integrity and veracity of each. We accept, of course, his opinion on that point, and concur in his findings that the testimony warrants the conclusion and holding that Mr. Bryan is mistaken and that the payment of the check was made by the bank unconditionally through Scott, the cashier, and that the bank is bound.

The check in question was drawn on the defendant bank.

"The law is firmly settled that when a check drawn on a partcular bank is pre-

sented to that bank for general deposit and the bank gives the depositor credit therefor, the relation between the bank and the depositor is that of debtor and creditor; since the giving of credit under such circumstances is practically and legally the same as if the bank had paid the money to the depositor and had received it again on deposit. The transaction is thus complete and cannot be rescinded except for fraud or in case of mutual mistake."

Cohen vs. First National Bank of Nogales, Arizona Supreme Court, 1921; 198 Pac. 122.

In the case of First National Bank vs. Burkhart, 100 U. S. 689; 25 Law Ed. 768, the court said:

"In Morse's well considered work on banking, page 321, it is said: 'but if at the time the holder hands in the check he demands to have it placed to his credit and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of a credit as equivalent to an actual payment the effect will be the same as if he had received his money in cash and the bank's indebtedness to him for the amount will be fixed and irrevocable.' We regard this as a sound and accurate exposition of the law upon the subject and it rests upon a solid basis of reason."

For the reasons assigned, the judgment appealed from is affirmed.