BROWN, GRAVES & COMPANY *vs.* AMBLER, MARVIN & STOCKTON.

*Letter—Bill of Exchange—Virtual acceptance—Acceptance of a Bill of Exchange—Action for Breach of promise to Accept—Conditional promise—Evidence.*

A letter, written a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken and promising to accept it, is, if shown or made known to the person who after-

Brown, Graves & Co. *vs.* Ambler, *et al.*

ward takes the bill on the credit of the letter, a virtual acceptance binding the writer.

The doctrine of a virtual acceptance of a non-existing bill, by a prior promise to accept it, when drawn, has no application to a bill drawn payable at some fixed period after sight.

Every acceptance of a bill of exchange ought to be positive and unconditional; but any one who should *bona fide* take a bill of exchange, on the faith of a letter promising to accept it, would have ample remedy by an action for the breach of the promise to accept.

Where authority was given by letter to draft on the writers at sight with a bill of lading for $500, as soon as the schooner "Russell," should complete her cargo of yellow pine flooring, and the writers stated that they would honor the draft, such promise imposed no obligation to accept a draft drawn on a cargo of yellow pine lumber, a little more than a third of which was of the required description.

And evidence to show that the cargo was as valuable as yellow pine flooring, was inadmissible.

APPEAL from the Superior Court of Baltimore City.

This was an action of assumpsit brought by the appellees against the appellants on a bill of exchange for $500, drawn by McGee & Hunt on the latter, payable at sight, to the order of J. Van Evary, and by him endorsed. The case is further stated in the opinion of the Court. It was submitted to the determination of the Court below without the aid of a jury.

*First Exception.*—The plaintiffs, further to support the issues joined on their part, offered evidence to show that while the cargo of lumber mentioned in the inspector's certificate, was not a cargo of yellow pine flooring, further than as shown by said certificate, as mentioned in the letter of credit attached to the declaration, it was equally as valuable as such a cargo would have been. To the admission of this testimony the defendants objected, but the Court (BROWN, C. J.,) overruled the objection and admitted the testimony. The defendants excepted.

Brown. Graves & Co. *vs.* Ambler, *et al.*

*Second Exception.*—The defendants prayed the Court to adopt as the rule of law applicable to the facts in evidence in this case as follows :

That if the Court finds that the cargo of the Russell, mentioned in evidence, consisted of yellow pine flooring only to the extent testified to by the witnesses, or as set forth in the inspector's certificate; and if the Court finds that the draft sued upon, with the bill of lading thereto attached, was presented to the defendants, and payment thereof refused by them before the arrival of said schooner with her cargo; and that the defendants, before the writing of their letter of Nov. 8, 1884, offered in evidence, had made an agreement with McGee & Hunt that McGee & Hunt should send them a cargo of lumber by said schooner to secure and repay an advance of $1000, made by said defendants to McGee & Hunt on the faith of such a cargo, and that upon the arrival of said cargo the defendants received it under a bill of lading, of the same terms as that annexed to the draft offered in evidence under the agreement aforesaid, as to said advance of $1000, and applied the proceeds, as far as the same would avail for the purpose, to the payment of said $1000, then the plaintiffs are not entitled to recover in this action.

The Court rejected the defendants' prayer and they excepted. The Court rendered a verdict for the plaintiffs for $545.52, and judgment was entered accordingly. The defendants appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, ROBINSON, and BRYAN, J.

*D. K. Este Fisher*, for the appellants.

McGee and Hunt had no authority to draw the draft in question under the circumstances disclosed by the evidence. The authority given by the letter was conditional. By the terms of the letter, the authority to draw was

made dependent upon the loading of the vessel with *"yellow pine flooring."* Until the vessel had *completed* her cargo of *"yellow pine flooring,"* McGee and Hunt were not entitled to draw—the furnishing of such a cargo being a condition precedent. And being a condition precedent it was absolutely essential that it should have been first strictly performed ·in order to entitle McGee and Hunt to draw the draft. *Boyce and Henry vs. Edwards,* 4 *Peters,* 25; *Anson on Contracts, 2nd Ed.,* 293, 295; *Lewis vs. Kramer and Rahn,* 3 *Md.,* 288, *et seq.*

If the letter of credit could be treated as an acceptance of the draft, the acceptance was at best a conditional one, and the appellees cashed it at their peril. 1 *Daniel, Negot. Inst., sec.* 508; *Benjamin's Chalmer's Digest, Art.* 39 ; *Lewis vs. Kramer and Rahn,* 3 *Md.,* 288, 290 *and* 291.

The burthen of proving the performance of the condition rested upon the appellees, and the performance should have been alleged in the *narr.* 1 *Daniel Negot. Ins., sec.* 508; 1 *Poe's Pleading, sec.* 565.

The appellees could 'not recover upon either the common or special counts, because the letter was not an acceptance of the draft in any aspect of the case. The case seems in fact to be concluded by the decisions of Judge STORY in *Wildes vs. Savage,* 1 *Story,* 22, and of this Court in the case of *Franklin Bank of Balto. vs. Lynch,* 52 *Md.,* 278–9 *and* '80, in which it was held, after full argument and consideration, that the rule laid down in *Coolidge vs. Payson,* in 2 *Wheat.,* 66, " that a letter written a reasonable time before or after a bill of exchange is drawn, describing it in terms not to be mistaken, and promising to accept, is if shown to one who takes the bill on the faith of it, a virtual acceptance" has no application to drafts at or after sight.

To apply the rule to bills payable at sight would be to wipe out the distinction between the latter and those payable on demand. Had the appellants meant a bill

payable "on demand," they would not have written to McGee and Hunt to draw "at sight." And it will not be intended in law, that the appellants meant a bill payable "on demand," for the policy of the law is against extending the application of the rule referred to. *Boyce and Henry vs. Edwards*, 4 *Peters*, 122; *Wildes, et al. vs. Savage*, 1 *Story*, 26, 27 *and* 28.

*John M. Carter*, for the appellees.

The appellants rely upon an assignment to themselves from McGee and Hunt, of the charter party of the vessel, executed in Baltimore before she started after the lumber, and certain conversations and promises of Hunt, the deceased partner, as to the extra fine quality of the lumber he proposed to ship. And they contend that they were entitled to hold the cargo under that assignment, to cover an advance of $1000 then made to Hunt.

But these transactions were unknown to the appellees. They were innocent purchasers for value, with no notice whatever of the equities between the appellants and the shippers. How, then, can the appellees be affected by these hidden equities, in the face of such a *carte blanche* as the letter of credit in these terms: "As soon as the schooner completes her cargo of yellow pine flooring, you can draw at sight with bill of lading for five hundred dollars, and we will honor same?"

The condition performed, the draft made in pursuance of such authority, could not, in the hands of an assignee, for a valuable consideration, be encumbered with the collateral obligations of the maker or assignor. *Rosenstock vs. Ortwine*, 46 *Md.*, 388; *Laflin & Rand Powder Co. vs. Sinsheimer*, 48 *Md.*, 418; *Ruhl & Son vs. Corner & Co.*, 63 *Md.*, 179.

BRYAN, J., delivered the opinion of the Court.

McGee and Hunt, merchants residing in Florida, were authorized by a letter from Brown, Graves & Co., of Bal-

timore, to draw on them at sight with a bill of lading for five hundred dollars, as soon as the schooner Russell should complete her cargo of yellow pine flooring. The writers stated that they would honor the draft. The schooner was loaded and McGee and Hunt drew a draft for the amount on Brown, Graves & Co., in favor of J. Van Evary. He presented the draft with the letter, and the schooner's bill of lading to Ambler, Marvin and Stockton, bankers, who cashed the draft, and forwarded it to Baltimore for collection. It was duly presented, and payment being refused, it was protested. The bill of lading stated the cargo to be one hundred and forty-five thousand feet of yellow pine lumber, more or less, which was to be delivered to Brown, Graves & Co., or to their assigns, they paying freight. There had been previous dealings between Brown, Graves & Co., and McGee and Hunt, which it is not necessary at this point to state.

Under the authority of the decision in *Franklin Bank vs. Lynch,* 52 *Md.,* 270, we must hold that Brown, Graves & Co. made a contract which would enure to the benefit of every *bona fide* holder of the draft who should take it on the faith of their letter; and that the necessary import of the contract was that the draft should be paid according to its tenor and effect. The contract, however, was on a condition stated on the face of the letter. There was no right to draw the draft until and unless the schooner completed her cargo of yellow pine flooring. If this condition was not performed, the right to draw did not exist. The bill of lading did not state that the schooner was laden with yellow pine *flooring,* but with yellow pine *lumber ;* and at the trial evidence was offered tending to show that only a little more than a third of the cargo was of the required description. The Court admitted evidence that the cargo was as valuable as yellow pine flooring would have been. In this ruling we think there was error. A purchaser of goods has a right

to articles of the kind and quality which he contracts to buy. It is not sufficient to give him something of a different kind which may be quite as valuable. It may not suit his purpose and wishes. An importer might order a cargo of coffee ; and he assuredly could not be required to accept in its stead a cargo of sugar on proof that it was equally as valuable. We have alluded to the other dealings between the drawers of the draft and Brown, Graves & Co. As these were not made known to the holder of the draft, he was not affected by them. He had a right to stand on the terms of the letter; and if the cargo laden on the schooner had been such as was described therein, we think the writers would have been liable for the amount of the draft.

It is a settled doctrine in our law, that a letter, written a reasonable time before or after the date of the bill of exchange, describing it in terms not to be mistaken, and promising to accept it, if shown or made known to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the writer. *Lewis vs. Kramer and Rahn*, 3 *Md.*, 289. It was said by Judge STORY in *Wildes vs. Savage,* 1 *Story's R.*, 22, that this principle was not applicable to any bills of exchange except such as were payable on demand, or at a fixed time after date. On this question he said: " Where bills are drawn payable at so many days after sight, it is impracticable to apply the doctrine ; for there remains a future act to be done, the presentment and sight of the bill, before the period, for which it is to run, and at which it is to become payable, can commence, whether it be accepted or be dishonored. If it is said, that the acceptance is to be treated as made, when the bill is actually presented for acceptance, and it is dishonored by the drawee, it is plain that we set up a prior intent or promise against the fact. Upon what ground can a Court say, when a party promises to do an act *in futuro*, such, for example, as to accept a

bill, when it shall be drawn, and presented to him at a future time, that his promise overcomes his act at that time? My judgment is, that the doctrine of a virtual acceptance of a non-existing bill, by a prior promise to accept it, when drawn, has no application to a bill drawn payable at some fixed period after sight; for it then amounts to no more than a promise to do a future act. I have looked into the authorities; and I do not find in any one of them, that the bill drawn, and to which the doctrine was applied, was a bill drawn at or after sight." This Court in the case of the *Franklin Bank*, 52 *Md.*, 270, refers to Judge STORY's opinion in terms of marked approval. We could not therefore hold the letter as a virtual acceptance of the draft. Another reason is that the promise to accept is conditional; whereas every acceptance of a bill of exchange ought to be positive and unconditional. All persons, however, who should *bona fide* take a bill of exchange on the faith of a letter promising to accept it, would have ample remedy by an action for the breach of the promise to accept. So the difference would be of no practical importance in its bearing on their rights.

Evidence was offered tending to show that sometime previously to the date of the letter in question, Brown, Graves & Co. had advanced to McGee and Hunt a thousand dollars on a cargo of yellow pine flooring to be brought by the schooner Russell; that after this advance was made, they requested by letter another advance of five hundred dollars more, and that therefore the letter was written in reference to the acceptance of the draft; that the draft, with the letter and bill of lading attached, arrived before the cargo, and was presented and acceptance refused; that subsequently the schooner arrived with its cargo which was delivered to them by the captain of the vessel, under a bill of lading identical in terms with the one attached to the draft; that the cargo was very indif- ferent, and was not yellow pine *flooring*, and that it was

OCTOBER TERM, 1886. 399

Chesapeake & Potomac Teleph. Co. *vs.* Balto. & Ohio Teleg. Co.

sold to the greatest advantage, and produced only eight hundred and eighty-three dollars and ninety-nine cents. It will be seen that according to this evidence, the cargo of the schooner was received by Brown, Graves & Co., in pursuance of a regular commercial contract made on valuable consideration; and that their possession of it was in no way derived from the holders of the draft and letter. Assuming it to be true; the cargo would unquestionably be the property of Brown, Graves & Co., and they would not be responsible to any other person for taking possession of it. We think that the prayer offered by the defendant is in accordance with the views which we have expressed. The Court erred in refusing it.

*Judgment reversed, and*
*new trial awarded.*

(Decided 5th January, 1887.)

