## WILLIAM HALL AND SIMEON F. HALL
### v.
## THE FIRST NATIONAL BANK OF EMPORIA.

*Banks—Commission Merchants—Draft of Consignor—Promise to Honor
—Course of Dealing—Evidence.*

1.  The construction of the parties to a contract as gathered from their acts will be regarded by courts in construing the same.

2.  When a party agrees to accept and pay drafts for cattle bought and consigned to him, without requiring a bill of lading to be attached, he, and not the party who in good faith advances money on a draft, relying on such promise, takes the risk of the stock being diverted while in transit either by accident or design.

3.  In an action brought by a bank to recover from a firm of commission merchants upon an alleged promise by them to accept and pay a certain draft drawn upon them by consignors of cattle, the same having been discounted by the plaintiff, this court holds, that the drawing of the draft in question was duly authorized; that the fact that the cattle against which it was drawn were diverted after shipment to another market cuts no figure in view of the fact that it did not appear there was any design in substituting other cattle, which sold for more than the draft called for, and declines to interfere with the verdict for the plaintiff.

[Opinion filed December 24, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. E. F. MASTERSON, for appellants.

Messrs. PECKHAM & BROWN, for appellee.

MORAN, J.   This appeal is prosecuted to review a judgment rendered against appellants and in favor of appellee, in an action brought upon an alleged promise by appellants to accept and pay a certain draft drawn upon them by the firm of Greer & May, and which had been discounted by appellee.

The evidence tended to show that Greer & May, who were cattle buyers, operating in and around Emporia, Kansas

made an arrangement with the appellants, by which they were to sell such stock as should be shipped to the Chicago market for said Greer & May, on certain terms as to commissions. Being about ready to make shipments, Greer & May wrote to appellants, on August 10, 1886, as follows:

" Please write the First National Bank of Emporia that you will pay our draft for any cattle we buy. I expect we will ship five or six loads of cattle the first of next week. There has not been any cattle shipped from here yet. Will commence to run soon. We think we will get you a good many cattle from here. The cattle men do not like present prices, but the cattle will have to go soon.

" Respectfully,     GREER & MAY.

" Greer."

On August 13th, after the receipt of that letter, appellants telegraphed appellee as follows:

"UNION STOCK YARDS, ILL., 8–13, 1888.

" We will honor Greer & May's draft for cost of cattle and hogs consigned to us.

" HALL BROS. & CO."

Between the date of said telegram and the drawing of the draft in suit, Greer & May drew some seven drafts on appellants, and appellee advanced money on said drafts to pay for cattle to be shipped to appellants, which drafts were all paid by appellants on presentation. The evidence also tended to show that three of these drafts had on their face the words, " drawn on tel. 8–14," and the draft in suit was drawn in the same way, and appellee advanced money on the credit of it to Greer & May to pay for the cattle consigned to appellants. By some confusion in shipping the cattle, the stock that was intended by Greer & May to be sent to appellants, at Chicago, were sent to and sold at Kansas City, and stock that was intended by them for Kansas City came through and were received and sold by appellants. Appellants refused to pay the draft, and they contend that the telegram authorized the payment of only one draft; that the word " draft " was used instead of " drafts," and that was so done advisedly. The question of whether the telegram authorized the drawing of

the draft in question when considered in the light of the let-ter in response to which it was sent, and the subsequent course of dealings between the parties, and all the circum-stances of the case, showing the construction which the par-ties themselves put on the telegram, was left to the jury by the trial court, under correct instructions, and the jury deter-mined that question against appellants' contention, and, as we think, rightfully. The construction of the parties, as gath-ered from their acts, will be regarded by the courts in con-struing the contract. Vermont St. M. E. Church v. Brose, 104 Ill. 206.

Appellants contend that the cattle against which the draft in question was drawn, never reached them, but were diverted to other parties, and an inferior lot of cattle substituted and shipped to them.

It is true that the cattle against which the draft was drawn did not reach appellants for sale, though it is by no means clear that there was any design in the substitution of the cattle which were sent to appellants, and it appears that the pro-ceeds of the cattle which appellants sold exceeded the amount of the draft, and that no other than appellee has made any claim to the proceeds, so that, as far as this claim is concerned, appellants have suffered no injury by the diversion of the cattle intended to be shipped, and which were, in fact, actu-ally consigned, and started on their journey to appellants.

But it being established that the holder of this draft, the bank, knew nothing whatever of the diversion of the consign-ment, and that the money furnished to Greer & May on the credit of the draft went to pay for the cattle which were con-signed to appellants, it is not perceived how the fact that the consignment was, while in transit, diverted to another con-signee, could affect appellee, it being a holder of the draft for value. The consignor has the legal right to change the des-tination of goods put in possession of a carrier, to be delivered to a designated consignee (Lewis v. Gal. & Chi. U. R. R. Co. 40 Ill. 281); and where a party agrees to accept and pay drafts for cattle bought and consigned to him, without requiring a bill of lading to be attached, he, and not the party who in

good faith advances money on the draft, relying on such promise to accept and pay, takes the risk of the stock being diverted while in transit, either by accident or design. Appellants requested the court to give to the jury, instructions, some twenty in number, and error is assigned on such refusal, as well as on the instructions given by the court.

It would serve no useful purpose to discuss these various instructions in detail. We have examined them, and considered counsel's contentions in regard to the action of the court thereon, and we are of opinion there was no error committed by the court, either in giving or refusing instructions.

Neither is there, in our opinion, any error available to appellant in this record, in regard to the form of the verdict, the amount of damages, or the rejection or admission of evidence. We find no error of law, and the verdict was warranted by the evidence, and in our opinion the judgment is upon the whole record just, and will therefore be affirmed.

*Judgment affirmed.*