## OIL WELL SUPPLY COMPANY v. GEORGE MAC MURPHEY.[1]

December 6, 1912.

Nos. 17,892—(90).

**Contract by telegraph.**

One Hukill residing in Pittsburgh, Pennsylvania, sent a telegram to the defendant, a resident of this state, reading: "Will you wire me that you will honor draft for $300?" Defendant telegraphed back, "I will." Thereupon Hukill presented draft for $300, drawn on defendant to Hukill's order, and the two telegrams, to plaintiff, which purchased the draft on the strength of the telegrams. *Held:* That the telegrams created an agreement on the part of defendant to honor the draft.

**Evidence inadmissible.**

As against plaintiff, the purchaser of the draft, defendant could not show that Hukill had failed to comply with the condition upon which defendant had consented to telegraph his agreement to honor Hukill's draft, there being no proof, or offer to prove, that plaintiff knew of the arrangement between Hukill and defendant.

Action in the district court for Big Stone county to recover $303.08 for breach of an alleged agreement to accept a sight draft. The answer denied the allegations of the complaint and prayed that the action be dismissed. The case was tried before Flaherty, J., who granted plaintiff's motion to direct a verdict in its favor for $366.

1 Reported in 138 N. W. 784.

From an order denying defendant's motion for a new trial, he appealed.  Affirmed.

*Ray G. Farrington,* for appellant.

*Cliff & Purcell,* for respondent.


HOLT, J.

The action is for a breach of an alleged agreement to honor a draft.  The court directed a verdict for plaintiff, and defendant appeals from an order denying him a new trial.

These are the uncontroverted facts: One Hukill, residing and doing business at Pittsburgh, Pennsylvania, applied to plaintiff to cash or buy a sight draft for $300 drawn by Hukill, payable to his own order, upon defendant, a relative of Hukill residing at Ortonville, Minnesota.  Plaintiff promised to do so if defendant, by telegram, would agree to accept the draft.  Thereupon, on the same day, to-wit, December 30, 1907, Hukill sent a telegram to defendant at Ortonville, reading:  "Will you wire me that you will honor draft for $300 ?"  The same day, in response to said message, defendant sent a telegram from Ortonville to E. M. Hukill at Pittsburgh, which reads: "I will."  Hukill thereupon presented the draft and the two telegrams to plaintiff, which bought the draft, and in due course of business caused it to be presented to defendant for acceptance and payment.  Defendant refused.  When plaintiff learned this, it wrote defendant as follows:

"Oil Well Supply Co.,
"Pittsburgh, Pa.

"January 7, 1908.

"Subject, E. M. Hukill draft.

"Mr. Geo. MacMurphey,
"Ortonville, Minn.

"Dear Sir:

"On December 31st, we cashed for Mr. E. M. Hukill a sight draft drawn on you for $300, which has been returned to us under protest, marked 'payment refused,' the fees amounting to $3.08.  We advanced said money on the strength of the telegram from you to Mr.

Hukill, dated December 30th, reading 'I will,' which he told us was in reply to a telegram sent to you by him on December 30th, reading, 'Will you wire me that you will honor draft for $300?' We would like to know at once your reason for not honoring the draft; also whether or not your telegram reading, 'I will' was in answer to a telegram sent by Mr. Hukill to you as quoted above. Trusting to hear from you by return mail, and thanking you in advance,

"We remain,
"Yours truly, .
"Louis Brown, Treas."

To this letter defendant appended this reply:

"Louis Brown,
    "Dear Sir:
"I will say in reply to the above that my telegram 'I will,' was in answer to above telegram from Mr. Hukill on December 30th. I was out of funds myself and tendered a check from Mr. H. and it was not accepted, hence the protest. I presume this is all cleared up ere this.

"Yours truly,
"Geo. MacMurphey."

It seems to us that the two telegrams constitute a clear and definite contract on the part of defendant to honor a draft for $300. The manifest purpose of Hukill's telegram was to get defendant to agree to honor or accept a draft. It was not to ask for a telegram, except as a means of conveying an agreement or refusal to honor the proposed draft. There can be no doubt that plaintiff took the telegrams to be an agreement by defendant to honor the draft. Defendant appears to be an intelligent professional man, and it is safe to assume that he was not unacquainted with business methods. Hence he must have inferred from the telegram that Hukill wished to negotiate the draft on the strength of defendant's agreement to honor it. That defendant so understood the purport of the telegram admits of no doubt, when the subsequent correspondence between him and plain-

tiff is considered.  In construing written contracts, the meaning of the language employed, taken in its ordinary and popular sense with reference to the matter in hand, controls unless, when so viewed, an ambiguity still remains.  If there be uncertainty after thus exam ining the agreement, the situation of the parties and the circum- stances surrounding the transaction may be considered, in order to arrive at the true and intended meaning of the ambiguous expres- sions used.  However, we cannot find any ambiguity in the telegrams constituting the agreement here, when applied to the subject matter. In contracts made by telegrams, the fewest possible words are used, and often omitted words in a message are to be supplied from the sense or context of a message to which it is an answer.  This is so usual an occurrence in the business world that courts must take no- tice of the fact.  Upon the undisputed facts, plaintiff was entitled to recover, and the court rightly directed the verdict, unless there was error in excluding certain evidence offered by defendant.

. The defendant offered to prove that long prior to December 30, 1907, he had been in the habit of honoring drafts made upon him by Hukill; that during such time defendant was in possession of valu- able stock pledged by Hukill to secure defendant against loss from such acceptances; that prior to said date, after he had surrendered this stock, Hukill requested defendant to honor further drafts, where- upon defendant stated he would not do so unless his, defendant's, financial condition at the bank at Ortonville was such that he could conveniently do so, and that Hukill should also again pledge with defendant the securities he before had; that he told Hukill not to draw any drafts on the defendant, until he had first wired to de- termine whether defendant would honor them; and that no such telegram or request should be sent to defendant, unless Hukill should, at the same time, place the said securities with defendant.  And further that, when defendant received the telegram and he answered the same, it was with the expectation that the security would be sent him; that such security was not sent, and defendant was in such financial condition in his accounts at the bank that he could not conveniently honor the draft.  We fail to see how the proffered proof could affect the plaintiff which bought the draft on the strength

of the telegrams. Defendant did not offer to show that plaintiff had any knowledge of either the first arrangement under which defendant honored Hukill's drafts or this last one.

The order must be affirmed.