## KELLER *v.* FREDERICKSTOWN SAVINGS INSTITUTION

[No. 169, October Term, 1948.]

*Decided June 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON and HENDERSON, JJ.

Submitted on brief by *David E. Betts* and *Charles W. Prettyman, II,* for appellant.

Submitted on brief by *Holden S. Felton,* for appellee.

GRASON, J., delivered the opinion of the Court.

On September 20, 1947, Mrs. Keller (appellant) was a depositor with the Frederickstown Savings Institution, a body corporate (appellee), a bank located at Frederick, Maryland, and had been for many years prior thereto. On that day she drew a check for $5000.00 on said bank to the order of the Allied Realty Corporation. The check was not certified. On September 23, 1947, she signed and delivered to a bank official an order to stop payment on this check. The check was thereafter paid by the bank. She instituted suit against the bank, which was tried in the Circuit Court for Frederick County before a judge, without the aid of a jury. A verdict was rendered for the bank and judgment being entered thereon, the case comes to this court on appeal.

On the morning of September 23, 1947, at nine o'clock, Mr. Albaugh, treasurer of appellee, received in the mail from the Bank of Bethesda, Bethesda, Maryland, the check in question, together with the following instructions in writing from that bank: "Check by Miriam Strouse Keller payable Allied Realty Corp. Upon receipt, please wire if paid or if not paid—collect." The payee named in the check had deposited it in the Bank of Bethesda. Mr. Albaugh called Mr. Bogley, President of the Bank of Bethesda, by telephone and told him the check was good, and he was "remitting for it". He deducted two dollars for service charge, drew a draft on the Riggs National Bank of Washington for $4998.00, "placed it in an envelope, sealed it and placed a 3-cent stamp on it and put it in the mail basket for delivery to the Post Office when the clerk went to the Post Office the next time". At that time "the draft was recorded on the draft register, which is our book where we record all drafts we issue on any of our correspondent banks. * * * A credit slip was made to the Riggs National Bank of Washington for $4,998, crediting the Riggs National Bank for the amount of the draft we had drawn on them. * * * The debit, of course, was Mrs. Keller's check",

which check was placed "in the tray we have for placing that kind of item, which all items like that must go through the proof machine before the bookkeepers get it". "Q. Then they go to the bookkeeping department where they are actually entered up and stamped? A. That's right." Mrs. Keller's account had not been charged on the ledger of the bank at the time the order to stop payment was given.

Mrs. Keller says she called at the bank between eleven and eleven fifteen that morning and saw Mr. Griffin, vice president of appellee, with whom she had transacted business for years. Mr. Griffin said he did not see her until he came in from lunch, but this discrepancy in time when they met at the bank that day is immaterial. They did meet, and the check was at the bank at that time. He procured for her a form to stop payment on this check, which he filled out and Mrs. Keller signed. Even though the check on which she gave a written order on the bank to stop payment was in the bank at the time, which he knew, he seemed to think that what Mr. Albaugh had done in the matter might prevent Mrs. Keller from stopping payment on the check, and he says he took the stop payment order conditionally. Of course, the order was either effective or futile. He had no authority or right to accept the order conditionally. These are the facts in the case, and present the single question: Did the bank have a right to pay the check to the Bethesda Bank and charge the same to appellant's account, under the circumstances in this case?

It may be said generally that the relation of a bank and a depositor is that of debtor and creditor; the money deposited in it is regarded as a loan to the bank by the depositor, with the right of the depositor to draw on it to the extent of the deposit. A check drawn by the depositor for a given sum of money to a person named therein is not an assignment, because the bank owns the money deposited, subject to the right of the depositor to draw on it.

Acceptance of a check must be in writing. Article 13, secs. 151 and 204, Code 1939. A telephone conversation by the payor bank to the payee bank that a check will be accepted for payment is not in law an acceptance. The payee bank could not successfully sue the appellee in this case if the check in question had not been paid to it, because there was no acceptance in writing of the check by the appellee. *Gruber v. Bank of America,* 127 Misc. 132, 215 N. Y. S. 222; *Ballen & Friedman v. Bank of Krenlin,* 37 Okl. 112, 130 P. 539, 44 L. R. A., N. S., 621; *Snyder & Blankfard Co. v. Farmers' Bank,* 178 Md. 601, 16 A. 2d 837; *Anderson v. Gill,* 79 Md. 312, 29 A. 527, 25 L. R. A. 200, 47 Am. St. Rep. 402.

If a check is cashed at the window of the bank upon which it is drawn, of course the check is dead. If a check is sent through the mail by a bank, for collection or payment to the bank on which it is drawn, and that bank charges the check on its books to the account of the drawer of the check or gives credit for it on its books to the account of the payee bank, this is equivalent to payment and the check is dead. *9 C. J. S., Banks and Banking,* § 245, page 502.

In the case of *Exchange Bank v. Sutton Bank,* 78 Md. 577, 28 A. 563, 564, 23 L. R. A. 173, the Sutton Bank was indebted to the Exchange Bank. It drew a check to the order of Jones, the cashier of the Exchange Bank, on J. J. Nicholson & Sons, for the amount of the indebtedness, which was signed by the cashier of the Sutton Bank, and mailed it to the Exchange Bank on the 9th of January, 1892. The Exchange Bank received it on the 13th of January and on that day forwarded it by mail to J. J. Nicholson & Sons, endorsed as follows: "For collection and credit account of Exchange Bank, Jan. 13th, 1892, of Wheeling, West Va., John J. Jones, Cash." Each bank had an account with Nicholson & Sons. It was received on the 14th and was stuck upon a file where were generally placed checks of this kind. There was money on deposit of the Sutton Bank to pay the check. Later in the day the check was taken from the file and

entered to the debit of the defendant's account, but was not entered as a credit to the account of the plaintiff before Nicholson made an assignment for benefit of creditors. It was said: "The evidence is clear that they did not transfer the credit for the amount of the note from the defendants to the plaintiffs. * * * and the failure to make such transfer was equivalent to a refusal to accept and pay."

"Where the drawee is acting in the dual capacity of collecting agent of the holder and as drawee, there can be no acceptance by delivery until the bills are passed through the books of the bank, charging the account of the drawer and crediting the account of the remitting bank, and making a completed transaction. *Exchange Bank v. Sutton Bank, supra.*" *First Nat. Bank v. First Nat. Bank,* 1913, 127 Tenn. 205, 154 S. W. 965, 967, 968.

In *Hunt v. Security State Bank,* 91 Or. 362, 179 P. 248, 251, it is said: "The instructions to the defendant were to 'remit in Portland exchange.' The Woodburn bank did not draw or mail its draft for the purpose of remitting to the United States National Bank of Portland until after Hunt countermanded payment of the Burdick check, and therefore we need not decide whether payment was completed when the draft was deposited in the post office or when received by the Portland Bank. * * * When Hunt ordered the defendant not to pay the check the bank had done nothing more than to satisfy itself that the check was genuine, and that there was sufficient funds to pay it, and to stamp it 'Paid,' and to place it upon the spindle. All this was merely preparing to pay; it was simply a step towards payment; it was not payment. No entry was made on the books. The drawer was not charged; the holder was not credited. It may be assumed that the bank intended to make appropriate entries on its books and to remit; but we are confronted with a situation where the bank had not yet executed its intention. An intention to pay is not payment. What the bank did was done in contemplation of payment; but payment was not completed." See *Beutel's Brannan*

*Negotiable Instruments Law,* Seventh Edition, page 1233, for comment on this case. *Sokoloff v. National City Bank,* 250 N. Y. 69, 164 N. E. 745; *Guardian Nat.. Bank v. Huntington County State Bank,* 206 Ind. 185, 187 N. E. 388, 92 A. L. R. 1056; *Davidson v. Allen,* 47 Idaho 405, 276 P. 43, 68 A. L. R. 856; *7 Am. Jur.,* sec. 602, page 437; *9 C. J. S., Banks and Banking,* § 344, page 692; *Universal Supply Co. v. Hildreth,* 287 Mass. 538, 192 N. E. 23, 94 A. L. R. 1389; *U. L. A.,* vol. 5, part 2, pg. 690 (190—Payment after stop order).

In this case, at the time the order to stop payment on the check was given the appellee had not accepted it for payment nor paid the check. It would be strange, under these circumstances, if the appellant could not stop payment on this check when no parties to the transaction would be harmed. By stopping this check the holder would be relegated to a suit at law against Mrs. Keller, and her responsibility thereon would be decided at the trial of the case.

We conclude that the learned judge below was in error in holding that the bank was not liable to Mrs. Keller, and the judgment appealed from is reversed.

> *Judgment reversed, and judgment entered for appellant for $5000.00 with interest from September 23, 1947, and costs.*